IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BARBARA L. R., )
)
      Plaintiff, )
)
v. ) Case No. 23-CV-469-CVE-MTS
)
MARTIN O'MALLEY,[1] )
Commissioner of Social Security, )
)
      Defendant. )

## REPORT AND RECOMMENDATION

This matter is before the undersigned Magistrate Judge for a report and recommendation. Plaintiff Barbara L. R. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge **RECOMMENDS** the Commissioner's decision denying benefits be **REVERSED** and **REMANDED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On February 26, 2014, Plaintiff filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA. (R. 68, 188). She alleged an inability to work beginning on October 31, 2012, due to hearing limitations and a hand injury. (R. 68). Plaintiff was fifty-eight years old at the time of the ALJ's decision. (R. 329, 331). She has at least a high school education and past relevant work as a cashier checker. (R. 329).

On March 22, 2016, ALJ B. D. Crutchfield issued a decision denying benefits and finding Plaintiff not disabled. (R. 426–43). Plaintiff sought review by the Appeals Council, which was

denied on February 2, 2017. (R. 444–46). Plaintiff then filed suit and the case was remanded to the Social Security Administration for further proceedings on January 23, 2019. (R. 466–86). On August 30, 2019, ALJ Crutchfield issued another decision denying benefits and finding Plaintiff not disabled. (R. 487–502). On August 17, 2021, the Appeals Council remanded the case for further proceedings. (R. 503–08). On February 9, 2022, ALJ Luke Liter issued a decision denying benefits and finding Plaintiff not disabled. (R. 527–46). On June 8, 2022, the Appeals Council remanded the case for further proceedings. (R. 547–52).

At Plaintiff's request, ALJ Liter conducted a second administrative hearing on February 23, 2023. (R. 340–67). The hearing was held via teleconference pursuant to COVID-19 procedures. (R. 322). ALJ Liter issued a decision on March 6, 2023, denying benefits and finding Plaintiff not disabled. (R. 319–39). The Appeals Council did not assume jurisdiction and Plaintiff did not file exceptions disagreeing with the hearing decision. (R. 312–18; *see* 20 C.F.R. § 404.984). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. *Id.*

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since October 31, 2012. (R. 325). At step two, he found Plaintiff suffered from the severe impairment of bilateral hearing loss. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 327). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform a full range of work at all exertional levels" with the following additional limitations:

> [T]he claimant can work in all noise environments as long as the job duties did not call for having to communicate verbally or over a radio or telephone. Instructions

4

> could be written or demonstrated, but not verbally communicated. If job duties include the need for face-to-face communication or communication over the phone, the noise environment would need to be either quiet or very quiet (as defined in the Selected Characteristics of Occupations).

*Id.*

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a cashier checker. (R. 329). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of ticket printer and tagger, housekeeping cleaner, and table worker, all of which he found existed in significant numbers in the national economy. (R. 330–31). As a result, the ALJ found Plaintiff had not been under a disability from October 31, 2012, through September 30, 2016, the date last insured. (R. 331).

**Errors Alleged for Review**

Plaintiff makes two general arguments in her challenge to the Commissioner's denial of benefits on appeal. (Docket No. 12 at 5). First, Plaintiff argues the ALJ failed to apply the correct legal standards when considering the medical opinions of record. *Id.* at 5–8. Second, Plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence. *Id.* at 8–11. In response, the Commissioner asserts that the ALJ did not err in his evaluation of the medical opinions of record and that, even if the ALJ applied the incorrect legal standard, Plaintiff failed to show that the ALJ's evaluation constitutes reversible error. (Docket No. 17 at 2–4). Furthermore, the Commissioner contends the ALJ's decision is supported by substantial evidence. *Id.* at 4–8.

**The Administrative Law Judge's Evaluation of the Medical Opinion Evidence**

For disability claims filed prior to March 27, 2017, an ALJ is required to evaluate every medical opinion of record and assign it a particular "weight." 20 C.F.R. § 404.1527. To do so, an

ALJ must consider certain factors[2] when determining what weight to assign a medical opinion. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). Additionally, "[an] ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). If an ALJ rejects a medical opinion, he must articulate "specific, legitimate reasons" for doing so as to enable meaningful court review. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).

    A. *Application of the Correct Legal Standard*

Plaintiff argues the ALJ failed to apply the correct legal standard[3] to the opinions of state agency consultants James Williams, M.D., and Herbert Meites, M.D. (Docket No. 12 at 5). The ALJ found the opinions "partially persuasive," as opposed to determining their weight.[4] *Id.* The

---

[2] These factors include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

[3] Preliminarily, the Court finds that 20 C.F.R. § 404.1527 applies to Plaintiff's claim, as it was filed prior to March 27, 2017. What is more, the Commissioner does not dispute the applicability of § 404.1527.

[4] For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. As such, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, the ALJ must articulate how *persuasive* he finds each medical source's opinion by considering certain factors. *Id.* § 404.1520c(b). These factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and

Commissioner admits that "using partially persuasive [w]as an unfortunate word choice[,]" but that it does not constitute reversible error. (Docket No. 17 at 2–4). Further, the Commissioner asserts that the ALJ's use of "partially persuasive" is akin to giving an opinion "considerable weight." *Id.* at 3.

The ALJ began his RFC discussion by stating that he considered all the opinion evidence pursuant to 20 C.F.R. § 404.1527. (R. 327). In discussing the state agency consultant opinions, the ALJ first stated that he gave no weight to the initial disability determination of Karl K. Boatman, M.D., from April 23, 2014, because it was not supported by the consultative examinations of record. (R. 329) (citing R. 68–73). He then explained that Dr. Williams' evaluation found Plaintiff had no severe mental impairment and that her limited hearing necessitated avoidance of even moderate noise exposure. *Id.* (citing R. 75–84). The ALJ gave Dr. Williams' opinion considerable weight as to Plaintiff's lack of severe mental impairment, as this was consistent with "a complete lack of mental health treatment before the date last insured and the lack of any care at an Emergency Room or inpatient treatment in a hospital. It is further consistent with unremarkable mental status examination at the [consultative examination.]" *Id.* (citing R. 265–71). However, the ALJ found Dr. Williams' opinion as to Plaintiff's hearing limitation to be partially persuasive, noting that Plaintiff "reasonably requires a more focused assessment of her hearing limitations, which is detailed in the [RFC]." *Id.* He then discussed Dr.

---

extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). *Id.* § 404.1520c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See id.* § 404.1520c(b)(2). The undersigned notes Plaintiff's assertion that, even if the ALJ was correct in applying § 404.1520c, he failed to properly evaluate the opinions' persuasiveness. (Docket No. 12 at 6). Given that § 404.1527 applies, this argument is moot.

7

Meites' opinion, an initial disability determination conducted for Plaintiff's subsequently filed Title II claim.[5]  *Id.* (citing R. 453–65).  Because Dr. Meites' opinion "mirrored" that of Dr. Williams', the ALJ accorded it the same weight for the same reasons. (R. 329) (citing R. 453–65).

An ALJ's "failure to apply correct legal standards, or show [the Court] it has done so, is [] grounds for reversal." *Hamlin*, 365 F.3d at 1215 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). However, "a court should not reverse for error that, 'based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings.'" *Robbins v. Colvin*, No. 13-cv-02429-CMA, 2015 WL 638201, at *3 (D. Colo. Feb. 12, 2015) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009)). Importantly, a determination that the ALJ failed to apply the correct legal standard typically implies "a disregard of a medical-source opinion." *Talamantes v. Astrue*, 370 F. App'x 955, 958 (10th Cir. 2010).  The ALJ did not disregard the opinions of either Drs. Williams or Meites.  In fact, he assigned considerable weight to the state agency consultants' opinions regarding Plaintiff's lack of severe mental impairment, and generally agreed with them in so far as the need for an RFC which included hearing-related limitations. (*See* R. 81, 329, 462). Both Drs. Williams and Meites' RFC assessments incorporated an environmental limitation that Plaintiff "avoid even moderate exposure to noise." (R. 81, 462).  The ALJ found such determinations partially persuasive, as opposed to assigning them a certain weight.  However, the ALJ also found a need for a more focused assessment, ultimately deciding that Plaintiff could "work in all noise environments" subject to certain restrictions as reflected in the RFC. (R. 327, 329). The ALJ did not reject Drs. Williams and Meites' opinions as to Plaintiff's hearing limitations, but rather found more particularized limitations to be appropriate.  Although the ALJ's word choice was error, the

---

[5] Plaintiff's subsequent Title II claim was filed on February 21, 2017. (R. 329).

undersigned finds that, when the discussion is taken as a whole, the use of the term "partially persuasive" does not necessitate reversal. *See King-Smalley v. Comm'r of Soc. Sec. Admin.*, No. CIV-19-262-SPS, 2020 WL 5203576, at *4 (E.D. Okla. Sept. 1, 2020) ("An ALJ's conclusions 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] medical opinion and the reasons for that weight.'"); *Gober v. Kijakazi*, 2:21-cv-01000-LSC, 2023 WL 7308082, at *7 (N.D. Ala. Nov. 6, 2023) ("And though the ALJ describes Dr. Whiten's opinions as 'not persuasive,' these statements on Dr. Whiten's opinions are sufficient to reflect the particular weight given by the ALJ[.]").

      *B. The Administrative Law Judge's Assessment of the State Agency Consultants' Opinions*

      Plaintiff also argues that the ALJ failed to properly assess the persuasiveness of the state agency consultants' opinions by not discussing the supportability and consistency factors pursuant to 20 C.F.R. § 404.1520c. (Docket No. 12 at 6). As mentioned previously, because Plaintiff's disability claim was filed prior to March 27, 2017, the applicable standard is that set out in 20 C.F.R. § 404.1527. However, both standards require an ALJ to address the factors of supportability and consistency when evaluating medical opinions. *See* 20 C.F.R. § 404.1527(c). The applicable regulations explain that for supportability, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that medical opinion." *Id.* § 404.1527(c)(3). For consistency, "the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion." *Id.* § 404.1527(c)(4).

      Contrary to Plaintiff's assertion, the ALJ addressed consistency, explicitly using the word when discussing the state agency consultants' opinions. (R. 329). Specifically, the ALJ found their opinions addressing Plaintiff's lack of severe mental impairment to be "consistent with a

9

complete lack of mental health treatment before the date last insured and the lack of any care at an Emergency Room or inpatient treatment in a hospital. It is further consistent with unremarkable mental status examination at the [consultative examination]." *Id.* However, the ALJ failed to mention or discuss supportability when weighing the state agency consultants' opinions. Although "[t]he ALJ's decision need not discuss explicitly all the factors for each medical opinion[,]" *Christian M. v. Saul*, No. 2:18-cv-00696-EJF, 2020 WL 1276661, at *3 (D. Utah Mar. 16, 2020) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)), the ALJ must "provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed . . . ." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

Earlier in the RFC discussion, before considering the state agency consultants' opinions, the ALJ reviewed some of the evidence relied upon by the state agency consultants. (R. 328–29). This included Plaintiff's physical consultative examination (R. 265–71), her function reports (R. 220–29, 823–43, 844–51), and audiology exam (R. 272–76). Despite discussing some of the evidence relied upon by Drs. Williams and Meites, the ALJ did not do so in the context of assessing their opinions. Further, the ALJ failed to discuss any factors other than consistency when weighing the opinions. Failing to consider and discuss the factors set out in 20 C.F.R. § 404.1527(c) in a way that allows for meaningful review is legal error. *See Kuykendall v. Colvin*, CV 13-877 MV/WPL, 2015 WL 13667511, at *9 (D.N.M. Jan. 26, 2015). Moreover, "[t]he undersigned 'may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'" *Shawn A. W. v. Kijakazi*, No. 20-cv-00663-SH, 2022 WL 807361, at *7 (N.D. Okla. Mar. 16, 2022) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007)). "Specifically, courts may not engage in a 'post hoc effort to salvage the ALJ's decision [that] would require [it] to overstep [its] institutional role and usurp essential functions committed

in the first instance to the administrative process.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Therefore, the undersigned finds the ALJ has committed legal error by failing to provide a sufficient basis upon which the undersigned may determine that the appropriate legal principles have been applied. On remand, the ALJ must properly evaluate the opinions of the state agency consultants by considering and discussing the applicable factors set out in 20 C.F.R. § 404.1527.

### The Administrative Law Judge's RFC Determination

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

11

### A. The Social Security Administration Field Officer's Notation

Plaintiff makes several arguments as to why the ALJ's RFC determination is not supported by substantial evidence. She first asserts that the ALJ impermissibly relied upon a field officer's notation in determining that Plaintiff's allegations of disability were inconsistent with the evidence of record. (Docket No. 12 at 8–9). The notation was made by J. Grauer on a field office disability report dated March 11, 2014. (R. 211–13). According to the report, J. Grauer did not observe any hearing difficulties while conducting the telephone interview with Plaintiff. *Id.* The ALJ included J. Grauer's observation in his RFC discussion, stating that "[d]uring a telephone interview with the agency field office in March 2014, the interviewer did not note any problems with hearing." (R. 328).

The ALJ's determination that Plaintiff's subjective complaints regarding her hearing are inconsistent with the record evidence does not rely solely on J. Grauer's observation. (*See* R. 327–29). The ALJ considered and discussed Plaintiff's own testimony and her difficulties hearing during the administrative hearing (R. 340–67); physical consultative examination (R. 265–71); audiological testing records (R. 272–76); and primary care physician and emergency room records that did not indicate hearing loss (R. 277–96, 301–09, 996–99). (*See* R. 328). In addition to medical records, an ALJ may consider lay evidence and recorded observations, among other forms of evidence. *See Kimes v. Comm'r, SSA*, 817 F. App'x 654, 659 (10th Cir. 2020); *Bonnie M. v. Kijakazi*, No. 19-CV-0622-CVE-JFJ, 2021 WL 4823270, at *7 (N.D. Okla. Oct. 15, 2021). Therefore, the undersigned finds the ALJ has committed no legal error in noting J. Grauer's observations.

### B.  *The Consultative Examiner's Observations*

Next, Plaintiff argues that the ALJ erred by: 1) misstating the consultative examiner's observations regarding Plaintiff's hearing; 2) finding Plaintiff's subjective statements inconsistent with the exam; and 3) relying on records of the exam as substantial evidence. (Docket No. 12 at 9–10).  On March 31, 2014, Johnson Gourd, M.D., met with Plaintiff for a consultative examination. (R. 265–71). Dr. Gourd noted that Plaintiff's "hearing [was] grossly normal at conversational volume and distance[.]" (R. 267). Dr. Gourd's assessment also stated: "Reports hearing loss- able to hear well enough at conversational levels and distance (with AC blower on) to follow instructions and answer questions. I do hear a slight speech impediment. Formal audiology testing would help determine any level of hearing loss." (R. 268). The ALJ considered Dr. Gourd's findings, stating "the examiner noted the claimant was able to hear well enough at a conversational level and at a distance even with the air conditioning on[.]" (R. 328). Plaintiff contends that the ALJ miscast Dr. Gourd's observations by stating that Plaintiff could hear "well enough . . . at a distance." *Id.*; (Docket No. 12 at 9).

The undersigned acknowledges that the ALJ's phrasing creates some ambiguity. Being able to hear *at a distance* is not necessarily the same as being able to hear at a *conversational* distance. However, regardless of whether the ALJ's statement was erroneous, the possible error is not "of sufficient importance to affect the validity of his [] assessment." *McCaskill v. Colvin*, No. 12-CV-95-PJC, 2013 WL 1961771, at *11 (N.D. Okla. May 10, 2013) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *Boehm v. Astrue*, 511 F. App'x 699, 702 n.2 (10th Cir. 2013)). As mentioned above, the ALJ's discussion of Plaintiff's subjective statements regarding her hearing relied upon more than just Dr. Gourd's observations. (R. 328). Moreover, the RFC includes several hearing-related restrictions addressing Plaintiff's hearing limitations:

13

> [T]he claimant can work in all noise environments as long as the job duties did not call for having to communicate verbally or over a radio or telephone. Instructions could be written or demonstrated, but not verbally communicated. If job duties include the need for face-to-face communication or communication over the phone, the noise environment would need to be either quiet or very quiet[.]

(R. 327). As such, the undersigned finds any potential error to be harmless.

*C. Consideration of Plaintiff's Non-Severe Impairments*

Plaintiff also asserts that the ALJ erred by failing to consider her non-severe finger and shoulder impairments when discussing her RFC and whether these impairments warranted any corresponding limitations. (Docket No. 12 at 10–11). In response, the Commissioner argues that the ALJ was not required to repeat his discussion of Plaintiff's finger and shoulder impairments, which he discussed in step two, during his RFC discussion. (Docket No. 17 at 7–8). The Commissioner also contends that Plaintiff failed to prove the alleged failure constitutes reversible error. *Id.*

When assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) ("We will consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC]."). Thus, reliance on a finding of non-severity at step two is not a substitute for an adequate RFC analysis. *Walls v. Comm'r of SSA*, No. CIV-21-143-KEW, 2023 WL 2555546, at *2 (E.D. Okla. Mar. 17, 2023) (citing *Wells*, 727 F.3d at 1071); *see Janet K. C. v. Kijakazi*, No. 22-CV-111-JFJ, 2023 WL 3582540, at *4 (N.D. Okla. May 22, 2023). However, "the ALJ's failure to consider a claimant's non-severe impairments when assessing the RFC does not necessarily warrant remand if 'the evidence in [the] case does not support assessing any functional

14

limitations from [the disregarded] impairments.'" *Janet K. C.*, 2023 WL 3582540, at *4 (quoting *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013)). The Court "may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings." *Alvey*, 536 F. App'x at 794 (citing *Wyo. v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)).

The ALJ discussed Plaintiff's finger and shoulder impairments at step two, "finding that these impairments have not caused more than minimal limitation in the claimant's ability to perform basic work activities for twelve consecutive months." (R. 325). The ALJ noted Plaintiff "demonstrated decreased flexion in the left second finger[,]" but that there were no further abnormal examinations after March 31, 2014, in addition to there being no reports from Plaintiff to a medical provider of further symptoms. *Id.* (citing R. 268). The ALJ also considered Plaintiff's August 2014 diagnosis of right shoulder bursitis. *Id.* (citing R. 998). Records indicated "pain with abduction and anterior tenderness on palpation[,]" but "the two most recent examinations in the record indicated only crepitus but normal range of motion[.]" *Id.* (citing R. 278, 281, 997). The ALJ also noted that Plaintiff testified to being able to grocery shop and perform house and yard work. *Id.* The ALJ then concluded his discussion of Plaintiff's finger and shoulder impairments by stating, "[t]he undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]."[6] (R. 325).

---

[6] The Court notes "the use of '[s]tandard boilerplate language [in lieu of particularized discussion] will not suffice" to support an ALJ's findings. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). "[B]oilerplate language fails to inform [the Court] in a meaningful, reviewable way of the specific evidence the ALJ considered . . . ." *Id.* However, boilerplate language "is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (citing *Hardman*, 362 F.3d at 679).

15

The ALJ failed to mention Plaintiff's non-severe impairments when assessing the RFC and did not explain if any work-related limitations resulted from these impairments. (*See* R. 327–29). However, the undersigned finds the ALJ's failure to conduct a more particularized analysis to constitutes harmless error. The ALJ thoroughly discussed the evidence regarding Plaintiff's finger and shoulder impairments at step two, explaining why he found them to not cause more than minimal limitation and to be non-severe. (R. 325). And Plaintiff has not identified evidence indicating otherwise. Furthermore, "[t]here is no substantial evidence that would allow a reasonable administrative factfinder to include any [related physical] limitations in [Plaintiff's] RFC." *Alvey*, 536 F. App'x at 795 (citing *Allen*, 357 F.3d at 1145).

### The Remaining Allegations of Error

Plaintiff's remaining allegation of error includes the claim that, had the ALJ properly discussed the state agency consultants' opinions, he may have applied more restrictive hearing limitations to the RFC. (Docket No. 12 at 7). If the ALJ had done so, Plaintiff argues, all three VE-identified jobs would be precluded because Drs. Williams and Meites limited Plaintiff to the avoidance of even moderate exposure to noise. *Id.* at 8 (citing R. 81, 462). Because these issues may be affected on remand, the Court declines to consider them herein. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### Relief Sought

Plaintiff "requests an outright award of benefits as she has sustained her burden four times now and Defendant has failed to sustain his burden four times." (Docket No. 12 at 11). The undersigned cautions that "the Commissioner is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco*

*v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).  However, "[o]utright reversal and remand for immediate award of benefits is [only] appropriate when additional fact finding would serve no useful purpose."  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams*, 844 F.2d at 760).  In making such a determination, the Court may consider certain relevant factors, such as "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits."  *Tucker v. Barnhart*, 201 F. App'x 617, 624–25 (10th Cir. 2006) (quoting *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006)). Ultimately, an award of benefits is a determination "within the discretion of the court, . . . and must be made with the consideration that a court may not decide the facts anew, reweigh the evidence, and must allow for the Commissioner to resolve factual issues and evidentiary conflicts."  *Burge v. Kijakazi*, No. CIV-21-079-KEW, 2022 WL 14049889, at *1 (E.D. Okla. Aug. 1, 2022) (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

The undersigned is cognizant of the time that has passed in association with Plaintiff's claim and the ALJ's failures as discussed above.  Nevertheless, the undersigned declines to recommend granting Plaintiff an award of benefits and "finds that a remand for further proceedings is appropriate, as an ALJ should fully consider the evidence and make the determination of whether Plaintiff is disabled."  *Id.*

**Conclusion and Recommendation**

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** the Commissioner's decision be **REVERSED** and **REMANDED**.

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this Report and Recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before August 7, 2024.

If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule," which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

DATED this 24th day of July, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT